# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LORETTA ALLS,**

        **Plaintiff,**

**-vs-**                                                              **Case No. 6:04-cv-1261-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on April 30, 2001. R. 77. She alleged an onset of disability on July 2, 1999, due to fibromyalgia and asthma. R. 77, 88. Her application was denied initially and upon reconsideration. R. 69. Plaintiff requested a hearing, which

was held on July 30, 2003, before Administrative Law Judge James R. Ciaravino (hereinafter referred to as "ALJ"). R. 14. In a decision dated September 18, 2003, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-20. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 8. The Appeals Council denied Plaintiff's request on July 20, 2004. R. 3. Plaintiff filed this action for judicial review on August 20, 2004. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of fibromyalgia, asthma, and joint pain. R. 87-96. Plaintiff also presented evidence of a mental health disorder.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from asthmatic bronchitis, arthralgias with positive rheumatoid factor, and obesity, which were a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b). R. 19, Finding 3. However, the ALJ found that Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. R. 19, Finding 4. The ALJ found that Plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision. R. 17-18. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift up to 20 pounds; sit, stand and walk without restriction; and with limited exposure to concentrated fumes, odors or gases. R. 19, Finding 7. Based on Plaintiff's description of her past relevant work as a secretary or clerk typist, the ALJ found that she could perform her past relevant work because the performance of her past work-related activities were not precluded by her RFC as these positions did not require lifting in excess of 20 pounds and was performed primarily while

seated. R. 18, 19. Accordingly, the ALJ determined that Plaintiff had not been under a disability at any time through December 31, 2002. R. 19, Finding 10.

Plaintiff assigns three errors to the Commissioner. First, Plaintiff claims that the Commissioner erred in discounting the opinion of her treating physician and in finding that Plaintiff could return to her past relevant work. Second, Plaintiff claims that the Commissioner erred in not properly evaluating her subjective complaints of pain. Third, Plaintiff claims that the Commissioner erred in not considering the impact of the her obesity on her ability to work. Fourth, Plaintiff contends the ALJ erred in not finding her mental impairment severe. All of Plaintiff's contentions are considered although not in the order argued by Plaintiff.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## III.  ANALYSIS

### A.  A severe mental impairment

Plaintiff argues that the ALJ erred in not finding she had a severe mental impairment. The Commissioner responds that the ALJ's decision was supported by substantial evidence because the medical evidence shows that Plaintiff's depressive disorder caused no more than slight limitations of function and did not prevent her from returning to past relevant work.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff points to her reports to the consultative physician, Dr. William Austin, who performed a psychological evaluation on December 18, 2001. At that exam, Plaintiff reported that for the last year she had experienced a depressed mood, crying spells, feelings of helplessness, irritability,

-4-

fleeting suicidal ideation, poor concentration, sleep disturbance, and isolation. R. 163. Although Dr. Austin described Plaintiff's mental health treatment history as "unremarkable," the diagnosis was major depressive disorder, single episode. R. 162-63.

As the Commissioner contends, the diagnosis of a mental condition does not establish that it results in functional limitations, citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). That is particularly the case when the diagnosis is "single episode." The medical records show that her rheumatologist, Dr. Sheikh, prescribed Zoloft to Plaintiff in May 2001 for treatment of fibromyalgia associated with anxiety; her prescriptions were changed and she was given Zoloft for the morning and Ultram was stopped. R. 128. There are no references to Plaintiff's alleged mental symptoms in the treatment records from Dr. Sheikh. Plaintiff was subsequently continued on the Zoloft in March 2002 by Dr. Black, her primary care doctor, when she changed insurance plans and needed a referral to a new rheumatologist. R. 203. Although Plaintiff's primary care physician, Dr. Black, lists "depression" in his assessment, his treatment notes do not include the signs, symptoms or complaints of depression upon which the diagnosis was based. R. 203. Moreover, on March 20, 2003, Dr. Black noted, "No serious depression issues or anxiety issues. The patient is not severely anxious at this time." R. 217.

Plaintiff did not seek mental health treatment. R. 162 ("mental health treatment history is unremarkable"). It is not clear that the prescription for Zoloft was for a mental disorder, rather than for Plaintiff's fibromyalgia.[1] Assuming Zoloft had been prescribed for depression, the failure of the physicians to recommend mental health treatment and of Plaintiff to seek such suggests that her

---

[1] Anti-depressants are commonly prescribed in the management of fibromyalgia. *See, e.g.*, Questions and Answers about Fibromyalgia, by the National Institute of Arthritis and Musculoskeletal Disorders, National Institute of Health, *at* http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm#fib_e (last visited December 7, 2005).

depression was adequately controlled by the Zoloft. No physician suggested that Plaintiff had limitations related to depression. At the hearing, Plaintiff testified that her thinking ability was off, but alleged no other mental limitations. R. 17. However, Plaintiff reported in forms submitted to Social Security that she was able to remember things and concentrate, even if she "sometimes" had difficulties. R. 118.

The consultative psychological evaluation performed by Dr. Austin demonstrated that Plaintiff was alert and oriented, her behavior was appropriate and cooperative, her speech was logical and coherent, she did not demonstrate any symptoms of psychosis, she sustained attention and concentration throughout the evaluation, and she had good judgment, insight, and impulse control. R. 163. He identified no impairment-related restrictions, but found her able to manage funds, complete varied activities of daily living and socialize. R. 163. A non-examining state psychologist completed a Psychiatric Review Technique on January 10, 2002 and found Plaintiff's impairment to be not severe. R. 164. He reviewed Plaintiff's mental health records and noted Dr. Austin's consultative report revealed no significant findings and determined Plaintiff had no more than mild restrictions on activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace. R. 174-76.

Based upon this evidence, the ALJ concurred with the state agency physician who opined that Plaintiff's mental impairment was not severe. R. 18, 164-77. Thus, it is apparent that the ALJ properly considered the evidence of record. The medical and other evidence support the ALJ's determination that Plaintiff did not suffer a severe mental impairment.

    **B.**    **RFC and the treating physicians' opinions.**

Plaintiff contends that the ALJ erred in not giving substantial weight to the opinion of her treating physician, Dr. Black, by concluding that Plaintiff had the residual functional capacity to return to her past relevant work. The Commissioner argues that substantial evidence supports the ALJ's determination that Plaintiff retained the ability to perform her former work prior to the expiration of her insured status on December 31, 2002.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In step four of the five steps the ALJ must follow in evaluating a claim of disability, the ALJ must determine whether or not the claimant is able to perform her past relevant work. "Past relevant work" is work experience that was done within the last fifteen years, lasted long enough for Plaintiff to learn it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). Plaintiff has the burden to prove her inability to perform her past relevant work prior to the expiration of her insured status. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that she cannot perform her past relevant work and the medical records show that she has been found to suffer from several severe ailments that prevent her from performing even sedentary work. She contends that records indicate she has suffered from congestive heart failure, consistent joint pain and swelling, rheumatoid arthritis, fibromyalgia, and asthma. Plaintiff contends that her primary care physician, Dr. Black, has indicated "consistently" throughout her medical treatment she has was having problems with joint pain and swelling, particularly in her metatarsophalangeal joint, proximal interphalangeal joints of the hands, wrists, elbows, and shoulders from rheumatoid arthritis and fibromyalgia. R. 199, 200-05, 218.

Dr. Black's records document standard preventative treatment and medication management. R. 197-204, 216-18.  His records reflect that Plaintiff had a history of fibromyalgia and admittedly *possible* rheumatoid arthritis, but on other occasions only minimal joint swelling.  R. 207, 208 (questionable rheumatoid arthritis; diagnosis not clear cut).  The records do not, however, reflect any work-related limitations or objective findings which would be expected to cause such limitations. Nevertheless, Dr. Black completed an RFC questionnaire on June 17, 2003, in which he reported that Plaintiff's lifting and carrying were limited to 10 pounds maximum; standing limited to two hours out of an eight hour workday with a maximum allotted time period of ten minutes; sitting not affected by her impairments -- limited to one hour without interruption; and no climbing, stooping, crouching, or kneeling with occasional balancing or crawling.  R. 220-21.  Environmental restrictions consisted of temperature extremes, chemicals, dust, noise, fumes, humidity and vibration.  R. 220-21.  Despite listing a limitation of ten pounds maximum in response to the question asking "what are the medical findings that support this assessment?" of Plaintiff's capacity to lift or carry, Dr. Black left it blank. R. 220.

On July 13, 2003, Dr. Black noted that Plaintiff was doing well on Celebrex for her arthritis symptoms.  R. 203.  The ALJ gave limited weight to Dr. Black's assessment in light of the fact that his progress notes and reported clinical findings did not support such limitations of function at the degree he noted.  R. 17.

Although Dr. Black did indicate on certain medical records that Plaintiff had rheumatoid arthritis (R. 201, 203), Dr. Sladek, Plaintiff's treating rheumatologist, found Plaintiff had not demonstrated the necessary swelling in her joints to meet the diagnosis. R. 16-17, 208-09.  In addition, Plaintiff's two specialists, her rheumatologists, Dr. Sheikh and Dr. Sladek, found that Plaintiff's joint

pain was controlled with medication. As the ALJ noted, although Plaintiff alleged a disability onset date of July 2, 1999, she provided no evidence of treatment prior to May 2001. R. 16. In May 2001, Dr. Vu (of Dr. Black's office) noted that Plaintiff had not seen a rheumatologist for over seven months, or since November of 2000. R. 126. He found Plaintiff had 5/5 motor strength, full range of motion of all extremities, intact sensory examination, and normal lab results. R. 126.

In May 2001, when Plaintiff saw Dr. Javaid Sheikh, he found that there had been no significant changes in symptoms since her previous clinic visit and there was no evidence of swelling or synovitis in Plaintiff's hands, feet, or wrists and that she had full range of motion. R. 128. The ALJ also considered the treatment records of Dr. Gary D. Sladek, Plaintiff's treating rheumatologist, who consistently found that Plaintiff did not meet the criteria for "RA," rheumatoid arthritis, or any other connective tissue disease. R. 17, 205-09. Plaintiff also cites to the report of another rheumatologist, Dr. Bandealy[2], that she had 11 out of 18 trigger points and crepitus of the knee at the October 18, 2001 examination. R. 155-56. Plaintiff was diagnosed with polyarthritis - "will be further investigated. Possibly inflammatory." R. 156.

However, prior to that time, an X-ray of the right knee on September 13, 2001 were within acceptable ranges, and demonstrated only minimal to mild arthritis. R. 154. On May 1, 2002 and July 31, 2002, Dr. Sladek saw Plaintiff for followup visits, and noted that she had arthralgia with a strongly positive rheumatoid factor -- questionable rheumatoid arthritis, but no clear-cut diagnosis. R. 207-08. Plaintiff did not exhibit joint swelling to substantiate a definite diagnosis of rheumatoid arthritis. R. 207. On October 29, 2002, after six months of treating Plaintiff, there had not been an evolution into

---

[2]The Commissioner contends that these were actually the findings of Laura Rowe, a nurse practitioner and an unacceptable medical source under the regulations. However, the report is also signed by Dr. Bandealy who "also saw the patient and reviewed the treatment plan. R. 156.

rheumatoid arthritis; her symptoms were moderately well controlled on minocycline. R. 206. Dr. Sladek found no evidence of swelling, motor weakness, or loss of range of motion, and X-rays of the hands and feet were normal R. 206. Again on February 11, 2003 and June 12, 2003, Dr. Sladek's impressions were rheumatoid factor. R. 206, 225. He noted on February 11, 2003 that "Celebrex seem[ed] to work quite well," but was not covered by her insurance. R. 205 (prednisone also had bee effective in the past when that was tried). On June 12, 2003 Dr. Sladek noted that Celebrex seemed to relieve her joint pain but she was "just taking it intermittently" -- she was not taking it anymore than the samples his office was providing her. R. 225. Additionally, although Plaintiff complained of pain and limitations of motion, Drs. Black, Vu, Sheikh, Hate´ and Sladek found that Plaintiff had essentially full range of motion of all extremities on repeated examinations, normal grip strength, and was able to ambulate without difficulty. R. 127-28, 184, 187-88, 206.

Plaintiff also claims she was impaired by congestive heart failure and points to an echocardiogram as showing "significant diastolic dysfunction." R. 153. There is no evidence that Plaintiff suffered from congestive heart failure other than as a provisional diagnosis of *possible* congestive heart failure when Plaintiff was hospitalized in July 2001. R. 144. However, there is no other mention of this condition anywhere else in Plaintiff's records. The results of the echocardiogram was not characterized as "significant." R. 153.

The ALJ's determination was supported by substantial evidence. None of the treating physicians' records support the extreme limitations reported by Dr. Black. The only other medical report of evidence was that from January 2002 of the examining physician, Dr. Hate´, whose examinations documented essentially benign findings and did not offer restrictions. R. 183-88. Dr. Hate´ noted that Plaintiff's gait was normal, her straight leg raising was negative, her strength was

-11-

normal in all major muscle groups, she had normal grip strength, and her fine and gross motor coordination were normal R. 184.  Plaintiff's physical examination was essentially within normal limits, other than slightly reduced thoracolumbar range of motion and difficulty getting up from the squatting position.  R. 185. State agency physicians reviewed the evidence and opined that Plaintiff was capable of light work.  R. 134, 190.  Thus, it is clear that the medical evidence did not support the RFC opinion of Dr. Black.  Accordingly, good cause existed for the ALJ's failure to credit his opinion.

**C.     Pain and credibility.**

Plaintiff asserts that the ALJ erred in evaluating her pain due to fibromyalgia, asthma, and obesity.  She also argues that the ALJ erred by finding her subjective complaints credible only to the extent she is limited to sedentary work.  She contends that medical records from Dr. Black consistently indicate that Plaintiff had swelling associated with her hands or general joint pain and swelling and this demonstrates her credibility (R. 155-61, 199, 203, 208, 218) and that the ALJ failed to provide adequate and specific reasons for discrediting her complaints.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 17. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  Moreover, the ALJ complied with those standards.  He obviously determined that plaintiff had an objective medical condition that could give

rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately before discussing Plaintiff's RFC, the ALJ stated,

> In determining the weight to give the claimant's testimony under the guidelines of Social Security Ruling 96-7p, the undersigned finds that the clinical evidence fails to support the degree of pain and limitations of function which she has described. X-rays of her hands and feet have been negative and the right knee showed only minimal arthritis. Swelling of the hands has been intermittent and minimal. She has reported to her treating physicians good relief of pain with medication. Despite her allegation of a thinking disorder, this has not been a problem reported to any treating source and a consultative evaluation noted no attention or concentration problems. She reported being able to do laundry, wash dishes, cook, and sweep when evaluated in December 2001. She continues to do light housework at this time. She has had a few exacerbations of asthma, one requiring hospitalization, but attacks have not been frequent. Accordingly, limited weight can be given to her overall testimony due to the lack of supportive evidence. R. 17-18.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between her reported limitations and the examination findings, as well as inconsistencies between her statements and her activities of daily living. *See, e.g.*, R. 128 (no swelling - May 15, 2001); R. 180 (normal spirometry – January 24, 2002); R. 197 ("She uses

Advair and Rhinocort whenever she has some mild flares of her asthma, but she is doing very well now"– October 6, 2002). These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. An X-ray of the right knee on September 13, 2001 was within acceptable ranges, and demonstrated only minimal to mild arthritis. R. 154.

Plaintiff's joint pain – which was never diagnosed by the rheumatologist as full-blown rheumatoid arthritis[3] – responded to treatment with medications. R. 202 (patient "doing relatively well" – March 31, 2002 after being prescribed Celebrex on March 3, 2002 (R. 203)) Dr. Sladek noted on February 11, 2003 that "Celebrex seem[ed] to work quite well," but was not covered by her insurance. R. 205 (another medication, prednisone, also had been effective in the past when that was tried). On June 12, 2003 Dr. Sladek noted that Celebrex seemed to relieve her joint pain but she was "just taking it intermittently" -- she was not taking it any more than the samples his office was providing her. R. 225.

Moreover, Plaintiff herself admitted that her pain was controlled with medications when she responded in a social security questionnaire in connection with her application for benefits that her medication was "about 80% effective" because she had "mild pain in [her] fingers, feet and sometimes upper back." R. 108 (June 11, 2001). All of Plaintiff's physicians found that Plaintiff had essentially full range of motion of all extremities on repeated examinations, normal grip strength, and was able to ambulate without difficulty. *See* R. 127-28, 184, 187-88, 206. The ALJ's reasons are supported by substantial evidence.

### D. Obesity and the combination of impairments

---

[3]Dr. Sladek found no evidence of swelling, motor weakness, or loss of range of motion, and X-rays of the hands and feet were normal on October 29, 2002. R. 206; R. 200 (rheumatologist is unable to make a diagnosis of rheumatoid arthritis because of not having many findings on her hands and feet -- May 12, 2002).

Plaintiff contends that the ALJ erred in not considering the impact of the combined effect of Plaintiff's obesity along with her severe joint arthralgia on Plaintiff's ability to work.[4] The ALJ found Plaintiff had arthralgias with positive rheumatoid factor and obesity, but these did not meet or medically equal an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  R. 19, Findings 3, 4. The Commissioner contends that the ALJ properly considered the combined impact of Plaintiff's obesity with her other impairments.

According to Social Security Ruling (SSR) 02-1p, obesity can cause the limitations of function in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, crouching, manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards.  *Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity*, 67 Fed. Reg. 57,859 (2002). "Individuals with obesity may have problems with the ability to sustain a function over time" and that "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity."  *Id.*  SSR 02-01p notes that obesity "often complicates chronic diseases . . . of the musculoskeletal body systems."

In unpublished decisions, the Eleventh Circuit has affirmed denial of disability benefits where the record contains no evidence showing that the claimant's obesity affected her ability to perform work-related activities. *See, e.g., Wind v. Barnhart*, 133 Fed.Appx. 684, 690-91 (11th Cir. 2005); *Hennes v. Commissioner of Social Sec. Admin,* 130 Fed.Appx. 343, 348 (11th Cir. 2005).  Similarly, in a published decision of the Ninth Circuit cited by the Commissioner, *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), the claimant argued that the ALJ had not considered her obesity (5'4" and

---

[4] Although the ALJ did not specifically address how Plaintiff's obesity affected her complaints of pain and her RFC, the Eleventh Circuit recently have reiterated that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the reviewing court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Hennes v. Commissioner of Social Sec. Admin.,* 130 Fed. Appx. 343, 348 n.11 (11th Cir. 2005) (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005)).

weighed 215 pounds) throughout the sequential evaluation process as required under SSR 02-1p, but the appellate court found that the claimant had not set forth any evidence that would support the diagnosis and findings of a listed impairment. *Burch*, 400 F.3d at 683.  The claimant testified that she experienced lower back pain that precluded her from standing, sitting, or walking for long periods and limited her daily activities, and the medical evidence showed that she had early degenerative disc disease mild to moderate obstructive pulmonary disease. *Id.*  However, as in this case, the claimant had not identified any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis, where the only evidence in the record relating to obesity were notes from doctors indicating that she was obese or had gained weight. *Id.* at 683-684.  In Plaintiff's case, although her physicians noted Plaintiff's height and weight or that she was obese, none of them recommended that she lose weight because it was affecting her condition or causing functional limitations.  As a result, Plaintiff has failed to present objective evidence showing that the ALJ failed to properly evaluate the impact of her obesity as required under SSR 02-1p.

## CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the

Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 28, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE